## BROWNELL v. RAUBENHEIMER.

United States District Court
S. D. New York.
May 7, 1953.

Myles J. Lane, New York City, for plaintiff.

Dobson, Moorhead & Dwyer, Brooklyn, N. Y., for defendant.

EDELSTEIN, District Judge.

The case arises on cross motions for summary judgment, based upon a stipulation of the existence of a single issue of law, in an action by the Attorney General of the United States as successor to the Alien Property Custodian for delivery to him of property, in the possession or under the control of the defendant, claimed

to be vested in the Alien Property Custodian. Section 17 of the Trading with the Enemy Act, as amended, 50 U.S.C.Appendix, § 17, 50 U.S.C.A.Appendix, § 17, and 28 U.S.C. § 1345. Defendant is sued as trustee under the will of her brother, Charles Christian Raubenheimer, who was a resident of the State of Missouri, and plaintiff represents the interests of the heirs of the deceased who resided in Germany at the time of testator's death and are listed in the vesting order in the complaint. The sole issue involved is the construction of the will,[1] which has not been previously construed, and particularly of "Item 8" which reads as follows:

"I hereby give and bequeath to my sister, Frieda Elizabeth Raubenheimer, Irvington, New Jersey, or her heirs, the sum of One Thousand Dollars ($1,000.00); and five (5) shares Union Electric Light & Power Co., of City of St. Louis, stock and ten (10) shares capital stock of Oil Conversion Progress Corporation, and all cash and bank books at the Mercantile Trust Company in my safe deposit box. The One Thousand Dollars is given to the said sister Frieda Elizabeth Raubenheimer is for her own property absolutely. But the shares of stock mentioned in this Item 8, and cash and bank books in my safe deposit box at Mercantile Trust Company is to be divided among our living heirs as she sees fit and chooses to do."

■ The recent case of Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, decided by the Supreme Court of Missouri in 1951, serves as the authoritative guide to the principles which must govern in construing the will. The principal issue to be decided is the significance of the last two sentences in "Item 8." It is conceded that the first sentence of the paragraph, standing alone, would vest in defendant full title to all the property there mentioned. But the problem is whether this absolute gift is cut down by the language of the two subsequent sentences. The rule to be applied is that a devise or bequest of an absolute estate " 'cannot be annulled except by later language in the will, which expressly or by necessary implication, arising from words equally as clear and conclusive as those in granting the fee, cuts down the previous grant of the fee'. [Citing cases.] * * * 'An intent clearly expressed is not to be defeated by implication from doubtful clauses, though seemingly inconsistent with such intent. It is true doubtful clauses must be considered with all the rest in arriving at the true intent of the whole, but, to modify or change the meaning of clear language by implication from doubtful clauses, "the implication to have such an effect should be very conclusive".' " Housman v. Lewellen, supra, 244 S.W.2d at page 24.

■ By this standard, I am persuaded that the absolute title to all the mentioned property but the $1,000, which is vested in the defendant by the first sentence, is abated by the express terms of the following two sentences. The words used in cutting down the previous grant of absolute title are equally as strong as the words used in that grant. The last two sentences are not "doubtful clauses * * * seemingly inconsistent" with the prior, clearly expressed intent, but in clear language they declare an unambiguous expression of intent, unencumbered by implication. The juxtaposition of these sentences leaves no doubt that the latter signifies a departure from the sense of the former in the ultimate disposition of the subject. The $1,000 which is the subject of the one sentence is for the defendant, but the property which is the subject of the other is to be divided "among our living heirs." The only discretion granted the defendant is in the manner of making a distribution, not in choosing whether to make one. A sentence diagram could make the meaning no plainer than appears from a single reading.

1. Jurisdiction exists in this court to render a judgment on the interpretation of the will, inasmuch as such a judgment will not disturb or affect the possession of any property in the custody of a state court. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256.

Since the defendant received the disputed property not for herself but in a fiduciary capacity with an unequivocal obligation to deliver it to the indicated beneficiaries, who are represented by the plaintiff, summary judgment for the plaintiff will be granted.[2]

2. Defendant is not pressing the argument that she could, in making the distribution, distribute the property in its entirety to herself as one of "our living heirs." Such an argument would be untenable. Taking the word "heirs", as used, to mean those who would be entitled to inherit under the intestate law, "our living heirs" must refer to a class composed of the living heirs of the decedent and (since *nemo est haeres viventis*) those who would be the heirs of the defendant were she deceased at the death of the testator. The language used is inartificial, but nevertheless unmistakably conveys the thought that distribution is to be made to those who are "heirs" of both testator and defendant. Eliminating the defendant, all the "heirs" are common to both. Only this interpretation of the quoted language can satisfactorily reconcile the distributive portion of the "Item" with the bequest of $1,000 to the defendant in preference to the other heirs.