In re Paul T. EARNHART and
Josephine L. Earnhart,
Debtors.

Bankruptcy No. BK 91–50384.

United States Bankruptcy Court,
S.D. Illinois.

Nov. 22, 1991.

George E. Marron, III, Highland, Ill., for First Nat. Bank of Highland.

Steven Mottaz, Alton, Ill., Trustee.

Dennis Koch, Highland, Ill., for debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Paul T. Earnhart and Josephine L. Earnhart ("debtors") filed a chapter 7 bankruptcy petition on April 16, 1991. Debtors listed as exempt their interests in three separate retirement plans pursuant to Ill.Rev. Stat. ch. 110, ¶ 12–1006(a).[1] The combined value of the three plans is approximately $72,610.00. Both the Trustee and First National Bank of Highland ("Bank") filed objections to debtors' exemptions, contending that the Illinois exemption statute for retirement plans is preempted by the Employee Retirement Income and Security Act ("ERISA").

The question of whether debtors may exempt the retirement plans at issue requires a two-step analysis. The Court must first decide whether the plans are property of the bankruptcy estate under 11 U.S.C. § 541. If the plans are found to be part of the estate, the Court must then determine whether the plans may be claimed as exempt property.

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, property becomes part of the bankruptcy estate regardless of any restrictions that may have

---

**1.** Paragraph 12–1006(a) provides:

A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended. Ill.Rev.Stat. ch. 110, ¶ 12–1006(a).

been placed on its transfer. 11 U.S.C. § 541(c)(1). An important exception to this rule is found in section 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). This Court has previously held that ERISA does not constitute "applicable nonbankruptcy law," and that a retirement plan may be excluded from the estate only if it qualifies as a spendthrift trust under state law. *See In re Kazi,* 125 B.R. 981, 985 (Bankr.S.D.Ill.1991).[2]

In the present case, the following three plans have been listed as exempt by debtors: (1) the Landmark Bancshares Plan, payable to Paul T. Earnhart at $721.85 per month for life and valued at $60,635.00; (2) Mutual of New York Annuitant's Withholding Fund Pension Plan ("MONY"), payable to Paul T. Earnhart at $42.55 per month for life and valued at $3,575.00; and (3) $100.00 per month payable to Paul T. Earnhart by Landmark Bank of Highland pursuant to a contract that debtors assert is a retirement plan, valued at $8,400.00. Mr. Earnhart, who retired in 1980, has been receiving payments under the Landmark Bancshares Plan since 1981 and under the MONY plan since 1982. Likewise, payments under the contract with Landmark Bank of Highland began in 1980 and have continued since that time.

Both the Trustee and the Bank have conceded that the MONY plan is a spendthrift trust under applicable state law and therefore not part of the bankruptcy estate. Both parties have accordingly withdrawn their objections to debtors' exemptions with regard to the MONY plan. The Trustee and the Bank do, however, contend that the remaining two plans are not spendthrift trusts and are therefore property of the bankruptcy estate.

■ The Landmark Bancshares Plan provides that the plan shall be "construed

and enforced according to the laws of the State of Missouri...." Restated Employees Retirement Plan of Landmark Bancshares Corporation at § 18.13. Missouri recognizes the spendthrift trust as a valid device "in which by the terms of the trust 'a valid restraint on the voluntary and involuntary transfer [of the interest] of the beneficiary is imposed.'" *McNeal v. Bonnel,* 412 S.W.2d 167, 170 (Mo.1967) (quoting *Restatement (Second) of Trusts* §§ 152, 153 (1957)). In Missouri, a trust will not be enforced as a spendthrift trust if (1) the settlor of the trust is also the beneficiary of the trust; (2) the beneficiary has dominion or control over the trust; (3) the beneficiary may revoke the trust; or (4) the beneficiary has powers in the trust. *In re Wessar,* No. 90-50413, — B.R. —, —, 1991 WL 189623, at *pg. 3, 1991 Bankr.LEXIS 1382, at *7 (Bankr.W.D.Mo. Sept. 13, 1991) (citations omitted). *See also In re Brown,* 130 B.R. 304, 308 (Bankr. E.D.Mo.1991).

Both the Trustee and the Bank concede that the Landmark Bancshares Plan is not self-settled, i.e., the debtors made no contributions to the plan. They argue, however, that because Mr. Earnhart has the option of receiving a lump sum payment in lieu of monthly payments, he has sufficient dominion and control over the plan to disqualify it as a spendthrift trust. In the "Summary of Plan Description" dated November 15, 1985, that option is described as follows:

*Option for Lump–Sum Payment*

With to [sic] the approval of the Pension Committee, you may choose to receive your entire benefit in a single payment. The Pension Committee will make its decision based on your circumstances and the purpose of the Plan, which is to provide pension benefits upon retirement. The Pension Committee normally will not approve the lump-sum option unless the amount of your benefit in a lump-sum is under $3,500 or there are extenuating circumstances.

Summary of Plan Description of the Restated Employees Retirement Plan of Land-

---

**2.** The Seventh Circuit has recently held that section 541(c)(2) does not apply solely to "traditional" (i.e., donative) spendthrift trusts and that retirement plans may be excluded from the bankruptcy estate if they satisfy spendthrift trust requirements under state law. *See Morter v. Farm Credit Services,* 937 F.2d 354, 357–58 (7th Cir.1991).

mark Bancshares Corporation at p. 10. The plan was later amended, as described below:

*Option for Lump Sum Payment* (Page 10)

The Landmark Plan does not permit the lump sum payment of a pension benefit unless the present value of the vested portion of your pension benefit at the time of benefit determination is $3,500 or less. The Pension Committee has no authority to make lump sum payments in other circumstances.

Summary of Material Modifications Restated Employees Retirement Plan of Landmark Bancshares Corporation at p. 2. According to the terms of the plan, as amended, a beneficiary may receive a lump sum payment *only* if the present value of the vested portion of the benefit is $3,500.00 or less. Even under the terms of the original plan, Mr. Earnhart's right to receive a lump sum payment was subject to the review of the Pension Committee, and approval normally was granted only where the value of the lump sum was less than $3,500.00.[3] This is clearly not a case where Mr. Earnhart had an unrestricted right to receive a lump sum payment upon retirement or termination of employment. *Cf. In re Wessar,* No. 90–50413, — B.R. at —– –—, 1991 WL 189623, at *pg. 3, 1991 Bankr.LEXIS 1382, at *7–8; *In re Mead,* 110 B.R. 434, 439 (Bankr.W.D.1990) (retirement plan that allows debtor to receive his or her entire vested interest in the plan at retirement or termination of employment does not constitute a spendthrift trust). *See also Morter v. Farm Credit Services,* 937 F.2d 354, 358 (7th Cir.1991) (retirement plan qualified as a spendthrift trust even though debtor could opt to receive a ten percent distribution at retirement, where the remaining ninety percent

was distributed in the form of periodic payments). The plan provides for a lump sum payment only under very limited circumstances, and debtors are otherwise not entitled to receive any of the funds until retirement. Thus, debtors do not have that degree of dominion and control required to disqualify the plan as a spendthrift trust.

Additionally, the plan contains the required anti-assignment and anti-alienation provisions. Section 18.03 provides, in relevant part, as follows:

None of the payments, benefits, or rights of any Participant or beneficiary shall be subject to any claim of any creditor ... and to the fullest extent permitted by law, all such payments, benefits, and rights shall be free from attachment, garnishment, trustee's process, or any other legal or equitable process available to any creditor of such Participant or beneficiary. No Participant or beneficiary shall have the right to alienate, anticipate ... or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under this Plan....

Restated Employees Retirement Plan of Landmark Bancshares Corporation at § 18.03. Furthermore, the debtors do not have the right to revoke the plan nor do they have any "powers" in the plan. In short, the plan has all of the attributes of a spendthrift trust under Missouri law, and is therefore not property of the bankruptcy estate.[4]

■ The third "plan" listed as exempt by debtors is actually a contract between Landmark Bank of Highland (formerly the Farmers and Merchants Bank of Highland) and Mr. Earnhart that allowed Mr. Earnhart to continue working for the Bank after retirement. The contract contains three options. Option One required Mr.

---

**3.** Similarly, if an employee terminated his or her employment with Landmark before retirement, that employee was entitled to a "cash payment" only if the present value of his or her vested benefit at the time of termination was less than $3,500.00. Summary of Plan Description of the Restated Employees Retirement Plan of Landmark Bancshares Corporation at p. 10.

**4.** Although the Landmark Bancshares Plan is controlled by Missouri law, the Court notes the Seventh Circuit's recent holding that "[i]f ... the debtor's access is restricted by a ban on receiving any of the funds until retirement, a prohibition against lump sum distributions, and restrictions on alienation, the pension should be excluded from the bankruptcy estate." *Morter v. Farm Credit Services,* 937 F.2d at 356–57.

Earnhart to tender his resignation by July 21, 1980, but provided that "the Executive Committee desires that you request to retain your title of Senior Vice President (Retired) of the Farmers and Merchants Bank of Highland and desires that you and your family continue to work for the bank at whatever level of activity you desire." As consideration for his agreement to continue working (and to abide by certain other conditions set forth in the contract), Mr. Earnhart was paid $1,510.00 per month up to and including October 14, 1982. At that time, Option Two became effective. Under Option Two, Mr. Earnhart continued his association with the Bank, and in return, was paid $416.66 per month up to and including October 15, 1987. Option Three then became effective, pursuant to which the Bank agreed to pay Mr. Earnhart $100.00 per month for life.

The parties appear to concede that the contract is governed by Illinois law since it was executed in Illinois. To qualify as a spendthrift trust under Illinois law, "the beneficiary thereof must show that he or she cannot alienate his or her interest therein and that he or she does not possess exclusive and effective control over distribution or termination of the trust." *In re Dagnall,* 78 B.R. 531, 534 (Bankr.C.D.Ill. 1987). "Of critical importance ... is whether a fund has access restrictions ... which 'place the fund beyond the reach of the beneficiary's creditors, as well as ... secure the fund against the beneficiary's own improvidence.'" *Morter v. Farm Credit Services,* 937 F.2d at 356.[5] Clearly, the contract at issue is not a spendthrift trust under Illinois law. As debtors readily concede, the contract contains provisions prohibiting the assignment or alienation of payments, and otherwise contains none of the characteristics of a spendthrift trust. Accordingly, Mr. Earnhart's interest in the contract constitutes property of the estate under section 541 of the Bankruptcy Code.

The only remaining question is whether debtors may claim the contract payments as exempt under the Illinois exemption statute for retirement plans. Under paragraph 12–1006(a), "[a] debtor's interest in ... payments under a retirement plan is exempt from ... seizure for the satisfaction of debts." Ill.Rev.Stat. ch. 110, ¶ 12–1006(a). However, "[t]o qualify for this protection, the retirement plan must be 'intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended.'" *Reliance Ins. Co. v. Zeigler,* 938 F.2d 781, 783–84 (7th Cir.1991) (citing Ill.Rev.Stat. ch. 110, ¶ 12–1006(a)). There has been no showing, and indeed, debtors have not argued, that the contract between Mr. Earnhart and Landmark Bank qualifies as a retirement plan under the Internal Revenue Code. Mr. Earnhart's interest in the contract cannot, therefore, be claimed as exempt under paragraph 12–1006(a).

Accordingly, for the reasons stated, the Court finds that the Landmark Bancshares Plan and the Mutual of New York Annuitant's Withholding Fund Pension Plan are spendthrift trusts, and are therefore excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). The objections to exemptions filed by the Trustee and First National Bank of Highland, with respect to those plans, are OVERRULED. The Court further finds that the contract between Mr. Earnhart and Landmark Bank constitutes property of the bankruptcy estate, and is not exempt under Ill.Rev.Stat. ch. 110, ¶ 12–1006(a). The objections to exemptions filed by the Trustee and First National Bank of Highland, with respect to that contract, are SUSTAINED.

---

5. The *Morter* case involved New York law, but the principles enunciated by the court with regard to spendthrift trusts in general are applicable to the instant case.